IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER L. PASCHALL                                                              PLAINTIFF

v.                            Civil No. 5:22-cv-05126

CHIEF OF POLICE FRANK GABLE,
Springdale Police Department; CITY OF
SPRINGDALE, ARKANSAS; JOHN DOE
CUSTODIAN OF THE RECORDS; OFFICER
JUSTIN INGRAM; OFFICER CODY ROSS;
OFFICER ROBERT STEWART; OFFICER
TRAVIS BYERS; JEFF HARPER, City Judge
and former Prosecutor; and ATTORNEY MARK
FREEMAN                                                                              DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Christopher L. Paschall ("Paschall"), currently an inmate of the South Central Correctional Center in Licking, Missouri, has filed civil rights action under 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.*

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court for preservice screening of the Amended Complaint (ECF No. 10) under 28 U.S.C. § 1915A. Pursuant to § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

### I.    BACKGROUND

Paschall's first claim centers on requests he has made under the Freedom of Information Act (FOIA) to the Springdale Police Department for body cam footage, dash cam footage,

1

photographs, warrants, inventory and release logs, evidence logs, and any other reports regarding the seizure of a vehicle from Hidden Lake Street Apartments on January 5, 2015. (ECF No. 10 at 4). Paschall says the Springdale Police Department assisted Missouri law enforcement in arresting him as a murder suspect.[1] *Id.* at 5. Paschall indicates a warrant was issued to search his apartment and to seize a 2013 Blue Nissan Rogue. *Id.* However, Paschall says he had returned the Nissan Rogue to the rental company months before when the insurance company downgraded him to a green Nissan Murano. *Id.* After he returned the Rogue, a witness, James Pippin, said he saw Paschall driving the Rogue at the time of the murders. *Id.* When the warrant was served, Paschall maintains the Murano was seized despite the warrant having been for the Rogue. *Id.* Paschall says the information he has requested will establish that the wrong vehicle was seized. *Id.* at 5. Paschall believes the information will exonerate him. *Id.* Paschall asserts that the failure to provide him with this information has resulted in the violation of his 4th, 5th, 6th, 8th, and 14th Amendment rights. *Id.* at 4. He also asserts Defendants have failed to return the seized vehicle to him. *Id.* at 4.

Paschall's second claim is about his arrest on January 5, 2015, and his being held until Missouri officers came to question him about the murders. (ECF No. 10 at 6). Paschall says no arrest was made or charges filed by Missouri at that time. *Id.* Instead, he maintains he was held on "trumped" up charges brought by the Springdale Police Department. *Id.* Paschall says he remained in jail for a year and a half on excessive bail until the charges were dismissed.[2] *Id.*

---

[1] Paschall was charged with two counts of murder in the first degree, three counts of being an armed criminal, and with parental kidnapping. He was found guilty on all counts on September 28, 2017, and sentenced to life in prison without parole on September 6, 2018. The court records are publicly available on Case.net a website maintained by the Missouri Courts. *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007)(court may take judicial notice of public records). https://www.courts.mo.gov/casenet/cases/searchDockets.do (accessed August 31, 2019).

[2] Paschall also mentions the alleged seizure of A. Paschall without a warrant while she was in possession of Mary and

2

With respect to Judge Harper,[3] Paschall alleges that he refused to recuse despite conflicts of interest and was the one who signed the warrants. *Id.* at 7.

Paschall's third claim concerns his house being broken into twice on unknown dates. (ECF No. 10 at 7-8). Paschall says Travis Byers and other officers allowed "two females to break my door down & steal my belongings." *Id.* at 8. Paschall indicates his mother witnessed this occurrence. *Id.* Complaints were filed on the officers who stood by at the scene. *Id.* Paschall alleges the Springdale Police Department refused to help him get his belongings back. *Id.* Prosecutor Harper charged Paschall with harassing Kayla Sipes ("Sipes") and Ashley Coover ("Coover"). *Id.* Paschall maintains Prosecutor Harper submitted affidavits from both Sipes and Coover despite the fact that both contained errors. *Id.* Paschall asserts that later Sipes damaged his mail box. *Id.* Despite Sipes' license plate number and description being reported, she was not charged. *Id.* Further, while he was driving, Paschall alleges his car was egged and he followed "them" while calling 911 but Prosecutor Harper refused to file charges. *Id.* at 9.

When he was arraigned on the harassment charges, Paschall says Larry Sipes threatened his life in front of the judge. (ECF No. 10 at 9). Despite being walked over to the prosecutor's office, Prosecutor Harper refused to file charges against Larry Sipes. *Id.*

Paschall maintains he was jailed for four months on the harassment charges. (ECF No. 10 at 8). He contends he was subjected to inhumane conditions of confinement. *Id.*

Paschall then mentions a series of events: a door being shoved by Officer Justin Ingram into his "child's mother while she was pregnant;" the unauthorized use of a private lane owned by

---

John Paschall. Paschall, who is a non-attorney, cannot represent the rights of others. 28 U.S.C. § 1654. These individuals were terminated as Plaintiffs for this reason.
[3] Paschall refers to Jeff Harper as occupying, presumably at different times, the position of municipal judge for the City of Springdale and the position of prosecuting attorney for the City of Springdale.

the Pachalls; and his being summoned to a structure for rescue horses, however, before he arrived the officers went ahead and conducted a search which caused damages to a gate and the horse structure. (ECF No. 10 at 9). No dates are provided for any of the events mentioned in claim three. *Id.* at 8-9.

Paschall's final claim is against his attorney, Mark Freeman. (ECF No. 10 at 9-10). Paschall says Attorney Freeman was paid to appeal the harassment charges from Springdale Municipal Court. *Id.* at 10. Paschall asserts that Attorney Freeman "lifted" his appeal without his consent. *Id.* at 8 & 10. Due to Attorney Freeman's actions, Paschall says he was incarcerated for four months. *Id.* at 10. Paschall asserts Attorney Freeman stole monies for services never rendered. *Id.* Paschall also alleges that "Freeman engaged in a civil conspiracy with Harper." *Id.* Paschall contends he was deprived of a full and fair hearing and the effective assistance of counsel. *Id.*

As relief, Paschall seeks compensatory and punitive damages. (ECF No. 10 at 11). He requests a declaration that his constitutional rights have been violated. *Id.* Finally, he asks for a court order for the production of all information he has sought through his FOIA requests. *Id.*

## II. LEGAL STANDARD

Under § 1915A, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be

4

false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988); *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded … to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. DISCUSSION

#### A. Statute of Limitations

In this case, a threshold issue is whether Paschall's claims are barred by the statute of limitations. Section 1983 does not contain its own statute of limitation. Instead, causes of action under § 1983 are governed by "the most appropriate or analogous state statute of limitations." *Wilson v. Garcia*, 471 U.S. 261, 268 (1985). In Arkansas, this is the three-year personal injury statute of limitations found in Ark. Code Ann. § 16-56-105(3). *See Mountain Home Flight Serv., Inc. v. Baxter Cnty., Ark.*, 758 F.3d 1038, 1044 (8th Cir. 2014). It is the standard rule that a claim

accrues when the plaintiff has a complete and present cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (cleaned up); *see also Rassier v. Sanner*, 996 F.3d 832, 836 (8th Cir. 2021) ("accrual occurs when the plaintiff can file suit and obtain relief").

This case was not filed until June 30, 2022, thus any claims arising before June 30, 2019, would be barred by the statute of limitations. This includes all claims arising out of the search, seizure of the Murano, and Paschall's arrest on January 5, 2015. With respect to claim three, although Paschall does not mention specific dates, the events involving him must have occurred prior to his incarceration in Missouri—no later than September of 2018. Thus, Paschall's claims are barred by the statute of limitations. To the extent there are any claims not barred, the claims are nevertheless subject to dismissal for the reasons outlined below.

## B. FOIA Claim

Violations of the Arkansas FOIA are not cognizable under section 1983 because they implicate only state law.[4] *See e.g., Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992)(even a "bad faith violation of state law remains only a violation of state law"). Defendants' failure to comply with the state FOIA did not deprive Paschall of any right, privilege, or immunity secured by the Constitution or laws of the United States.[5] To the extent, Paschall's

---

[4] The Federal FOIA, 5 U.S.C. § 552, applies only to federal agencies. *See e.g., Rimmer v. Holder,* 700 F.3d 246, 258 (6th Cir. 2012).

[5] Paschall also complains he was never given a reason why he was not provided with the information sought in response to his FOIA requests. The Arkansas Freedom of Information Act, specifically, Ark. Code Ann. § 25-19-105(a)(1)(B)(i)-(ii), provides that examination and copying of public records shall be denied to a "person who at the time of the request has pleaded guilty to or been found guilty of a felony and is incarcerated in a correctional facility." Requests by a representative of the prisoner may also be denied unless it is the person's attorney who is requesting the information subject to disclosure.

claims are based on violations of the FOIA, including his claims against the records custodian, no plausible claim is stated.

### C.  Claims Against Jeff Harper

As previously noted, Paschall makes claims against Jeff Harper in his capacity as a municipal judge for the City of Springdale and as prosecuting attorney for the City of Springdale. In either capacity, Mr. Harper is immune from suit.

Paschall alleges that Judge Harper failed to recuse himself despite having a conflict of interest and signed the warrants authorizing the January 5, 2015, search, and the seizure of a vehicle.  Judges are generally immune from individual capacity damages suits based on actions taken within their judicial capacity.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("judicial immunity is an immunity from suit, not just from ultimate assessment of damages").  Judicial immunity is only overcome in two narrow situations: (1) if the challenged act is non-judicial; and (2) if the action, although judicial in nature, was taken in the complete absence of all jurisdiction. *Id*.  Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)(citations omitted).

The only allegations Paschall has made against Judge Harper are related to the criminal proceedings against him.   Paschall's individual capacity claims against Judge Harper fail as he is immune from suit.

Paschall alleges Prosecutor Harper submitted affidavits that were false.   Paschall further maintains that Prosecutor Harper failed to file charges against those who committed crimes against

7

Paschall.  The United States Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), established the absolute immunity of a prosecutor from a civil suit for damages under 42 U.S.C. § 1983 "in initiating a prosecution and in presenting the State's case."  *Id*. at 427.  This immunity extends to all acts that are "intimately associated with the judicial phase of the criminal process."  *Id.* at 430.

Immunity is not defeated by "[a]llegations of unethical conduct and improper motive in the performance of prosecutorial functions."  *Sample v. City of Woodbury,* 836 F.3d 913, 916 (8th Cir. 2016).  "[A] prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony . . . or withheld or suppressed exculpatory evidence."  *Woodworth v. Hulshof,* 891 F.3d 1083, 1089 (8th Cir. 2018)(cleaned up).  The immunity extends to "a civil conspiracy charge when [the prosecutor's] alleged participation in the conspiracy consists of otherwise immune acts."  *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006)(citation omitted).

Paschall has failed to allege Prosecutor Harper engaged in any conduct other than prosecutorial functions.  "Whatever [Prosecutor Harper's] motives may have been . . . [his] conduct in filing [and pursuing] the charges is protected by absolute immunity."  *Sample,* 836 F.3d at 916.  Accordingly, Prosecutor Harper is entitled to absolute immunity on the individual capacity claims against him.

### D.  Claims against Attorney Freeman

A § 1983 complaint must allege that each defendant, acting under color of state law, deprived plaintiff of "rights, privileges or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 secures most constitutional rights from

8

infringement by governments, not private parties." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). A private attorney does not act under color of law for purposes of § 1983. *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999)("[T]he conduct of counsel generally does not constitute action under color of law"); *Harkins v. Eldredge*, 505 F.2d 802, 803 (8th Cir. 1974)("The conduct of counsel, either retained or appointed, in representing clients does not constitute action under color of state law for purposes of a § 1983 violation"). No plausible claim is stated against Attorney Freeman.

### E.  Official Capacity Claims

An official capacity claim is considered a claim against the governmental entity, here, the City of Springdale. *Crawford v. Van Buren Cnty.*, 678 F.3d 666, 669 (8th Cir. 2012). That is, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). To prevail on an official capacity claim, Paschall must establish the City of Springdale's liability for the alleged misconduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).

There are three ways in which Paschall may prevail on the official capacity claims. Municipal liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Paschall's first method to establish municipal liability is to point to a policy that was the moving force behind the alleged constitutional violations. In this context, policy means an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Indep., Mo.,* 829 F.3d

9

695, 700 (8th Cir. 2016). Paschall has pointed to no policy the application of which caused the constitutional violations. In fact, he asserts the Defendants failed to follow the proper procedures for searching for and seizing the vehicle and arresting him. This is the opposite of establishing the existence of an unconstitutional policy. *See e.g., Johnson v. Blaukat,* 453 F.3d 1108, 1114 (8th Cir. 2006)(finding no § 1983 liability where county's policies, which were facially constitutional, were not followed by its employees).

Next, Paschall may establish municipal liability by showing an unofficial custom was the moving force behind the constitutional violations.

> [A] plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700 (cleaned up).

Here, Paschall points to no continuing, widespread, persistent pattern of unconstitutional conduct. In fact, he only mentions the specific incidents in which he was involved. He has not alleged "a sufficient number of unconstitutional acts to support an inference" of any deliberate indifference or tacit authorization by policymaking officials to employee misconduct. *Mick,* 883 F.3d at 1080. Paschall has not alleged sufficient facts to suggest that an unofficial custom was the moving force behind the alleged constitutional violations.

The third method of establishing municipal liability is by establishing a deliberately indifferent failure to train or supervise. To show deliberate indifference, Paschall must allege the City of Springdale "had notice that its procedures were inadequate and likely to result in a violation

of constitutional rights." *Jennings v. Wentzville R-IV Sch. Dist.,* 397 F.3d 1118, 1122 (8th Cir. 2005). Paschall has failed to allege that there was a deliberately indifferent failure to train or supervise the offending actors.

In short, Paschall's allegations fail to describe any policy, custom, or deliberately indifferent failure to train or supervise. No plausible official capacity claims have been stated against the Defendants.

## IV.   CONCLUSION

For these reasons, it is recommended that the case be **DISMISSED WITHOUT PREJUDICE** because the claims are barred by the statute of limitations, Defendant Harper is immune from suit, and for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of August 2022.

*s/ Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE